UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

In re:                                                  Chapter 11

**500 SUMMIT AVENUE MAZAL LLC,**          Case No.:  23-11831 (LGB)

                              Debtor.
------------------------------------------------------------X


# PLAN OF REORGANIZATION


**Leech Tishman Robinson Brog, PLLC**
Attorneys for the Debtor
875 Third Avenue
New York, New York 10022
Tel. No. 212 603 6300
Fred B. Ringel Esq.
Clement Yee, Esq

New York, New York
January 26, 2024

1

<u>INTRODUCTION</u>

500 Summit Avenue Mazal LLC ("<u>Debtor</u>") proposes the following chapter 11 plan of reorganization pursuant to section 1121(a) of the Bankruptcy Code. Capitalized terms used herein shall have the meanings set forth in Section 1.A of the Plan.

Reference is made to the Disclosure Statement for a discussion of the Debtor's history, business, properties and operations, projections, risk factors, a summary and analysis of this Plan, and certain related matters.

**ALL HOLDERS OF CLAIMS AND INTERESTS ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY, PARTICULARLY HOLDERS OF CLAIMS AND INTERESTS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN.**

**SECTION 1. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW, AND OTHER REFERENCES.**

A. <u>Defined Terms</u>.

1.1 ***Administrative Expense Claim*** means any Claim for costs and expenses of administration during the Chapter 11 Case pursuant to sections 503(b) or 507(a)(2) of the Bankruptcy Code, including, (a) the actual and necessary costs and expenses incurred after the Commencement Date through the Effective Date of preserving the Estate and operating the business of the Debtor (such as wages, salaries or commissions for services and payments for goods and other services and leased premises); (b) Fee Claims; and (c) all fees and charges assessed against the Estate pursuant to section 1911 through 1930 of chapter 123 of title 28 of the United States Code.

1.2 ***Administrative Expense Claims Bar Date*** means the first Business Day that is 30 days following the Effective Date, except as otherwise specifically set forth in the Plan.

1.3 ***Administrative Expense Claims Objection Bar Date*** means the first Business Day that is 120 days following the Effective Date, except as otherwise specifically set forth in the Plan; provided that the Administrative Expense Claims Objection Bar Date may be extended pursuant to an order of the Bankruptcy Court upon a motion filed by the Post-Effective Date Debtor, as applicable, after notice and a hearing.

2

1.4    *Allowed* means with reference to any Claim: (a) any Claim against any Debtor that has been listed by the Debtor in its Schedules, as such Schedules may be amended by the Debtor from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of Claim has been filed, (b) any Claim listed on the Schedules or included in a timely filed proof of Claim, as to which no objection to allowance has been, or subsequently is, interposed in accordance with Section 7.9 hereof or prior to the expiration of such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or as to which any objection has been determined by a Final Order to the extent such Final Order is in favor of the respective holder, or (c) any Claim expressly allowed by a Final Order.

1.5    **Auction** means the auction for the sale of the Property to be held in accordance with the Bid Procedures.

1.6    *Available Cash* means all Cash of the Debtor, including, income realized from the Debtor's business operations, the sale or other disposition of its assets, the interest earned on its invested funds, recoveries from Causes of Action or from any other source or otherwise.

1.7    *Avoidance Action* means any action commenced, or that may be commenced, before, on, or after the Effective Date pursuant to section 544, 545, 547, 548, 549, 550, or 551 of the Bankruptcy Code.

1.8    *Bankruptcy Code* means title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., as amended from time to time, as applicable to this Chapter 11 Case.

1.9    *Bankruptcy Court* means the United States Bankruptcy Court for the Southern District of New York having jurisdiction over the Chapter 11 Case and, to the extent of any reference made under section 157 of title 28 of the United States Code, the unit of such District Court having jurisdiction over the Chapter 11 Case under section 151 of title 28 of the United States Code.

1.10    *Bankruptcy Rules* means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time, applicable to the Chapter 11 Case and any Local Rules of the Bankruptcy Court.

1.11    *Bar Date Order* means that certain *Order Establishing Deadline for Filing Proofs of Claim Against the Debtor and Approving the Form and Manner of Notice Thereof* entered on December 20, 2023 at ECF 28 which established January 26, 2024 as the last day for creditors to file claims against the Debtor's Estate and established May 24, 2024 as the last date for Governmental Units to file claims against the Estate.

1.12    ***Bid Procedures*** means the bid and auction procedures, approved by the Court (ECF []) that, among other things establishes procedures for the Auction and the terms and conditions related to the sale of the Property under this Plan.  A copy of the Bid Procedures are attached as **Exhibit 1**.

1.13    ***Business Day*** means any day other than a Saturday, a Sunday or any other day on which banking institutions in New York, New York are required or authorized to close by law or executive order.

1.14    ***Cash*** means legal tender of the United States of America.

1.15    ***Causes of Action*** means any action, Claim, cause of action, controversy, demand, right, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Commencement Date, in contract or in tort, in law or in equity or pursuant to any other theory of law. Causes of Action also includes: (a) any right of setoff, counterclaim or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any Avoidance Action; (d) any claim or defense including fraud, mistake, duress and usury and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state law fraudulent transfer claim.

1.16    ***Chapter 11 Case*** means the case under chapter 11 of the Bankruptcy Code commenced by the Debtor on November 16, 2023 and captioned *In re 500 Summit Avenue Mazal LLC*, Case No. 23-11831 (LGB)

1.17    ***Claim*** has the meaning set forth in section 101(5) of the Bankruptcy Code.

1.18    ***Claims Objection Bar Date*** means the first Business Day that is 120 days after the Effective Date; provided that the Claims Objection Bar Date may be extended pursuant to an order of the Bankruptcy Court upon a motion filed by the Post-Effective Date Debtor.

1.19    ***Class*** means any group of Claims or Interests classified pursuant to Section 3.1 of the Plan.

1.20    ***Commencement Date*** means November 16, 2023.

1.21    ***Confirmation Date*** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order.

1.22 ***Confirmation Hearing*** means the hearing to be held by the Bankruptcy Court regarding confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

*1.23* ***Confirmation Order*** means an order of the Bankruptcy Court confirming the Plan.

1.24 ***Consummation*** means the occurrence of the Effective Date of the Plan.

1.25 ***Closing*** means the closing of either the Refinancing Transaction, Joint Venture Transaction, or the Sale Transaction (either to a third-party or to a Secured Creditor's credit bid). The Closing of either the Refinancing or Joint Venture Transaction shall occur as soon as practicable after the Effective Date, but no later than May 14, 2024. If there is no Refinancing Transaction or Joint Venture Transaction, and the Debtor conducts a sale pursuant to the Bid Procedures, the Closing shall occur after the Auction is completed, but no later than May 14, 2024. The date of the Closing may be extended with the consent of the Mortgage Lender.

1.26 ***Cure Obligation*** means all (a) amounts (or such other amount as may be agreed upon by the parties under an Executory Contract or Unexpired Lease) required to cure any monetary defaults; and (b) other obligations required to cure any non-monetary defaults under any Executory Contract or Unexpired Lease that is to be assumed by the Debtor pursuant to sections 365 or 1123 of the Bankruptcy Code.

1.27 ***Debtor*** means 500 Summit Avenue Mazal LLC.

1.28 ***Disbursing Agent*** means the Debtor's counsel as the entity designated by the Plan and charged with the responsibility of making the payments under the Plan.

1.29 ***Disclosure Statement*** means the disclosure statement for the Plan which is prepared and distributed in accordance with sections 1125, 1126(b) and/or 1145 of the Bankruptcy Code, Bankruptcy Rule 3018 and/or other applicable law, as the same may be amended or modified from time to time.

1.30 ***Disputed Claim*** means with respect to a Claim or Interest, any such Claim or Interest (a) to the extent neither Allowed nor disallowed under the Plan or a Final Order nor deemed Allowed under section 502, 503 or 1111 of the Bankruptcy Code, or (b) for which a Proof of Claim or Interest has been filed, to the extent a Debtor or any party in interest has interposed a timely objection or request for estimation before the Confirmation Date in accordance with the Plan, which

objection or request for estimation has not been withdrawn or determined by a Final Order.

1.31   ***Distribution Date*** means a date or dates, as determined by the Disbursing Agent in accordance with the terms of the Plan, on which the Disbursing Agent makes a distribution to holders of Allowed Claims.

1.32   ***Distribution Record Date*** means the Effective Date of the Plan.

1.33   ***Effective Date*** means the date on which all conditions to the effectiveness of the Plan set forth in Section 10.2 hereof have been satisfied or waived in accordance with the terms of the Plan.

1.34   ***Entity*** has the meaning set forth in section 101(15) of the Bankruptcy Code.

1.35   ***Estate*** means as to each Debtor, the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code upon the commencement of each respective Debtor's Chapter 11 Case.

*1.36*   ***Estimated Professional Fee Escrow***  means the escrow account established by the Debtor ten (10) days prior to the Confirmation Date holding sufficient Cash to pay the Fee Claims in full, subject to their allowance by the Bankruptcy Court upon the later of (i) the Effective Date or (ii) the date upon which the order relating to any such Allowed Fee Claim is entered or (iii) upon such other terms and conditions as may be agreed to between the holder of such an Allowed Fee Claim, and the Debtor or Post-Effective Date Debtor, as applicable.  Such Estimated Professional Fee Escrow shall be included as part of the Refinancing, Joint Venture Proceeds, or Sale Proceeds.

1.37   ***Exculpated Parties*** means collectively, the Debtor and its successors and assigns, subsidiaries, affiliates, current and former officers, directors, principals, shareholders, members, partners, employees, and each of their respective, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, and other professionals, and such persons' respective heirs, executors, Estate, servants and nominees, in each case in their capacity as such.

1.38   ***Executory Contract*** means a contract to which a Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

6

1.39    ***Existing Equity Interests*** means all Interests in a Debtor, including membership interests or the rights to acquire any such Interests.

1.40    ***Fee Claim*** means a Claim for professional services rendered or costs incurred on or after the Commencement Date through the Effective Date by professional persons retained by the Debtor pursuant to sections 327, 328, 330, 331, or 503(b) of the Bankruptcy Code in the Chapter 11 Case.

1.41    ***Final Order***  means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court, which has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument or rehearing shall then be pending, or (b) if an appeal, writ of certiorari, new trial, reargument or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, reargument or rehearing shall have expired; provided, however, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion pursuant to section 502(j) or 1144 of the Bankruptcy Code or under Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024 has been or may be filed with respect to such order or judgment.

1.42    ***General Unsecured Claim*** means any unsecured Claim that is not entitled to priority under the Bankruptcy Code or any order of the Bankruptcy Court.

1.43    ***Governmental Unit*** has the meaning set forth in section 101(27) of the Bankruptcy Code.

1.44    ***Guarantors*** means Amir Hasid and Nir Amsel.

1.45    ***Impaired*** means, with respect to a Claim, Interest or Class of Claims or Interests, "impaired" within the meaning of section 1124 of the Bankruptcy Code.

1.46    ***Interests*** means any equity security in a Debtor as defined in section 101(16) of the Bankruptcy Code, including all instruments evidencing an ownership interest in the Debtor, whether or not transferable, and any option, warrant or right, contractual or otherwise, to acquire any such interests in a Debtor that existed immediately before the Effective Date.

4862-2664-5662, v. 3

1.47    *Joint Venture Agreement* means a Joint Venture Agreement, in form and substance reasonably acceptable to the Debtor and the Joint Venturer which provides for the transfer of the Property and/or Interests to the Joint Venturer in exchange for the Joint Venture Proceeds.  A copy of any Joint Venture Agreement will be filed as part of the Plan Supplement. Existing Interest Holders may be participants under the Joint Venture Agreement.

1.48    *Joint Venturer*  means one or more Persons under the Joint Venture Agreement.

1.49    *Joint Venture Proceeds* means the Cash proceeds from Joint Venture Transaction net of closing costs including but not limited to Debtor's brokerage fees, if any, title costs and other ordinary and necessary costs of, or credits related to, the transfer of title to the Property.  The Joint Venture Proceeds shall be in an amount sufficient to satisfy Administrative Claims, Fee Claims (including any broker commission), Secured Tax Claims, Mortgage Claims (as modified by this Plan), Priority Tax Claims, and Priority Claims.  Under any circumstances, the Joint Venture Proceeds must net at least $32,500,000 to satisfy the Mortgage Claim.

1.50    *Joint Venture Transaction* means the transfer of the Property and/or Existing Equity Interests pursuant to the Joint Venture Agreement.

1.51    *Mortgage Claim* means the Secured Claim against the Property, as held by Mortgage Lender as the holder of the Note and Mortgage.

1.52    *Mortgage Lender*  means 500 Summit Avenue LLC in its capacity as the pre-petition mortgage lender to the Debtor.

1.53    *Mortgage* means the Amended and Restated Mortgage and Security Agreement entered into to secure repayment of the Note, encumbering the Property, which was recorded on May 14, 2019 in the Register's Office on May 14, 2019, Book: 19381, Page: 851, under Instrument#: 20190514060063180.

1.54    *Lien* has the meaning set forth in section 101(37) of the Bankruptcy Code.

1.55    *Note*  means the Amended and Restated Note in the principal amount of $19,600,000.

1.56    *Other Secured Claim* means a Secured Claim, other than the Mortgage Claim.

1.57    *Person* means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability

8

partnership, trust, estate, unincorporated organization, Governmental Unit or other entity.

1.58    ***Plan*** means this chapter 11 plan of reorganization, including the exhibits hereto and the Plan Supplement, as the same may be amended or modified from time to time in accordance with Sections herein.

1.59    ***Plan Supplement*** means the compilation of documents and information, if any, required to be disclosed in accordance with section 1129(a)(5) of the Bankruptcy Code; provided that, through the Effective Date, the Debtor shall have the right to amend any schedules, exhibits, and the other documents contained in, and exhibits to, the Plan Supplement with prior consent of the Mortgage Lender.

1.60    ***Post-Effective Date Debtor*** means the Debtor after the Effective Date.

1.61    ***Priority Claim*** means any Claim against the Debtor entitled to priority in payment as specified in section 507(a) of the Bankruptcy Code, other than an Administrative Expense Claim or a Priority Tax Claim.

1.62    ***Priority Tax Claim*** means any unsecured Claim of a Governmental Unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.63    ***Pro Rata*** means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims and Disputed Claims within such Class.

1.64    ***Proof of Claim*** means a proof of Claim filed against a Debtor in its Chapter 11 Case.

1.65    ***Property*** means 4, 8 and 10 West Street, Jersey City, NJ 07306 (Block: 9604, Lot(s): 11, 12 and 13); 11 West Street, Jersey City, NJ 07306 (Block: 9605, Lot: 2.01); 9 West Street, Jersey City, NJ 07306 (Block: 9605, Lot: 3); 506 Summit Avenue, Jersey City, NJ 07306 (Block: 9605, Lot: 4); and 225 Baldwin Avenue, Jersey City, NJ 07306 (Block: 10803, Lot: 27.01) (collectively, the "Property")

1.66    ***Purchase Agreement*** means an Asset Purchase Agreement, in form and substance reasonably acceptable to the Debtor, as seller, and the Purchaser, as buyer, which provides for the sale of the Property, submitted at or prior to the Auction to the Debtor and determined by the Debtor pursuant to the Bid Procedures to reflect the highest or otherwise best offer for the Property.

1.67    ***Purchaser*** means one or more purchasers under the Purchase Agreement.

1.68    ***Refinancing Proceeds*** means the Cash proceeds from Refinancing Transaction net of closing costs including but not limited to Debtor's brokerage fees, if any, title costs and other ordinary and necessary costs of, or credits related to, the transfer of title to the Property.  The Refinancing Proceeds shall be in an amount sufficient to satisfy Administrative Claims, Fee Claims (including any broker commission), Secured Tax Claims, Mortgage Claims (as modified by this Plan), Priority Tax Claims, and Priority Claims.  Under any circumstances, the Refinancing Proceeds must net at least $32,500,000 to satisfy the Mortgage Claim.

1.69    ***Refinancing Transaction*** means the refinancing of the Debtor's debts in an amount sufficient to fund the Refinancing Proceeds.  Copies of any documents necessary for the Refinancing Transaction will be filed as part of the Plan Supplement.

1.70    ***Sale Proceeds*** means the Cash proceeds from the Sale Transaction net of closing costs including but not limited to Debtor's brokerage fees, if any, title costs and other ordinary and necessary costs of, or credits related to, the transfer of title to the Property.  The Sale Proceeds shall be in an amount sufficient to satisfy Administrative Claims, Fee Claims (including any broker commission), Secured Tax Claims, Mortgage Claims (as modified by this Plan), Priority Tax Claims, and Priority Claims.  If the Property is sold to a third party that is not the Mortgage Lender, the Sale Proceeds must net at least $32,500,000 to satisfy the Mortgage Claim.

1.71    ***Sale Transaction*** means the sale of the Property pursuant to the Purchase Agreement.

1.72    ***Schedules*** means the schedules of assets and liabilities and the statement of financial affairs filed by the Debtor under section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements have been or may be supplemented or amended from time to time.

1.73    ***Secured Claim*** means a Claim to the extent (i) secured by property of the Estate, the amount of which is equal to or less than the value of such property (A) as set forth in the Plan, (B) as agreed to by the holder of such Claim and the Debtor or (C) as determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code, or (ii) secured by the amount of any rights of setoff of the holder thereof under section 553 of the Bankruptcy Code.

1.74    ***Unexpired Lease*** means a lease to which a Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

10

1.75   ***Unimpaired*** means, with respect to a Claim, Interest or Class of Claims or Interests, that such Claim or Interest is not "impaired" within the meaning of section 1123(a)(4) and 1124 of the Bankruptcy Code.

### B.   Interpretation; Application of Definitions and Rules of Construction.

Unless otherwise specified, all section or exhibit references in the Plan are to the respective section in, or exhibit to, the Plan, as the same may be amended, waived or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection or clause contained therein. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. For purposes herein: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neutral gender shall include the masculine, feminine, and the neutral gender; (2) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, all references herein to "Sections" are references to Sections hereof or hereto; (4) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (5) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

### C.   Computation of Time

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

### D.   Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws (other than section 5-1401 and section 5-1402 of the New York General Obligations Law), shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in

which case the governing law of such agreement shall control); *provided*, *however*, that corporate governance matters relating to the Debtor, as applicable, shall be governed by the laws of the relevant state of formation of the relevant Debtor, as applicable.

### E.    Reference to Monetary Figures

All references in the Plan to monetary figures refer to currency of the United States of America, unless otherwise expressly provided.

### F.    Controlling Document

In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the Plan shall control (unless stated otherwise in the Plan). The provisions of the Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; provided that, if there is determined to be any inconsistency between any Plan provision and any provision of the Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern and any such provision of the Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

## SECTION 2.    ADMINISTRATIVE EXPENSE AND PRIORITY CLAIMS.

### 2.1.    *Administrative Expense Claims.*

Except to the extent that a holder of an Allowed Administrative Expense Claim and the Debtor agree to different treatment, the Debtor shall pay to each holder of an Allowed Administrative Expense Claim, Cash in an amount equal to such Claim (plus statutory interest on such claim, if applicable), on or as soon thereafter as is reasonably practicable, the later of (a) the Effective Date and (b) the first Business Day after the date that is thirty (30) calendar days after the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim; provided that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtor shall be paid by the Debtor in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing or other documents relating to such transactions.

Except as otherwise provided by a Final Order previously entered by the Bankruptcy Court (including the Bar Date Order), requests for payment of Administrative Expense Claims, other than requests for payment of Fee Claims, must be filed and served on the Debtor no later than the Administrative Expense

Claims Bar Date pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order.

Holders of Administrative Expense Claims that are required to file and serve a request for payment of such Administrative Expense Claims and that do not file and serve such a request by the Administrative Expense Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Expense Claims against the Debtor's Estate or their property, and the Administrative Expense Claims shall be deemed compromised, settled, and released as of the Effective Date. The Debtor must file and serve objections to Administrative Expense Claims on or before the Administrative Expense Claims Objection Bar Date.

2.2. *Fee Claims.*

All Entities seeking an award by the Bankruptcy Court of Fee Claims shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is thirty (30) days after the Effective Date. No later than ten (10) days prior to the Effective Date, all entities holding claims for Fee Claims shall serve upon the Debtor a notice of the estimated amount of their unpaid Fee Claim (which estimate shall also include an estimate of fees through 30 days after the Effective Date) and, no later than five (5) days before the Effective Date, the Debtor shall segregate into an Estimated Professional Fee Escrow the amounts which are necessary to pay the amount of such Fee Claim, in full subject to allowance by the Bankruptcy Court (i) upon the later of (A) the Effective Date and (B) the date upon which the order relating to any such Allowed Fee Claim is entered or (ii) upon such other terms as may be mutually agreed upon between the holder of such an Allowed Fee Claim and the Debtor, the Post-Effective Date Debtor. The Debtor or Post-Effective Date Debtor, as applicable, is authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Confirmation Date in the ordinary course and without the need for Bankruptcy Court approval.

The Debtor is authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Effective Date in the ordinary course and without the need for Bankruptcy Court approval.

2.3. *Priority Tax Claims.*

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive, at the election of the Debtor (i) Cash in an amount equal to such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the later of the Effective Date, the first Business Day after the date that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, and

13

the date such Allowed Priority Tax Claim is due and payable in the ordinary course or (ii) such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code and, for the avoidance of doubt, holders of Allowed Priority Tax Claims will receive interest on such Allowed Priority Tax Claims after the Effective Date in accordance with sections 511 and 1129(a)(9)(C) of the Bankruptcy Code.

## SECTION 3.  CLASSIFICATION OF CLAIMS AND INTERESTS.

### 3.1.   *Classification in General.*

A Claim or Interest is placed in a particular Class for all purposes, including voting, confirmation, and distribution under this Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code; provided that a Claim or Interest is placed in a particular Class for the purpose of receiving distributions pursuant to this Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Claim or Interest has not been satisfied, released, or otherwise settled prior to the Effective Date.

### 3.2.   *Summary of Classification.*

The following table designates the Classes of Claims against and Interests in the Debtor and specifies which of those Classes are (a) Impaired or Unimpaired by the Plan, (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code, and (c) deemed to accept or reject the Plan.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified and, thus, are excluded from the classes of Claims and Interests set forth in this Section 3. All of the potential Classes for the Debtor are set forth herein. The Debtor may not have holders of Claims or Interests in a particular Class or Classes, and such Classes shall be treated as set forth in Section 4.

| Class | Designation | Treatment | Entitled to Vote |
|:---:|---|:---:|:---:|
| 1 | Secured Tax Claim | Unimpaired | No (presumed to accept) |
| 2 | Mortgage Claim | Impaired | Yes |
| 3 | Other Secured Claims | Impaired | Yes |
| 4 | General Unsecured Claims | Impaired | Yes |

14

| 5 | Existing Equity Interests | Impaired | Yes |
|---|---|---|---|

3.3.   *Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the rights of the Debtor and/or Debtor's Estate in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

3.4.   *Elimination of Vacant Classes.*

Any Class of Claims or Interests that, as of the commencement of the Confirmation Hearing, does not have at least one holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) or 1129(b) of the Bankruptcy Code with respect to that Class.

3.5.   *Voting Classes; Presumed Acceptance by Non-Voting Classes.*

If a Class contains Claims or Interests eligible to vote and no holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Debtor shall request the Bankruptcy Court at the Confirmation Hearing to deem the Plan accepted by the holders of such Claims or Interests in such Class.

3.6.   *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.*

The Debtor shall seek confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. The Debtor reserves the right to modify the Plan, in accordance with Article 13 hereof to the extent, if any, that confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

## SECTION 4.  TREATMENT OF CLAIMS AND INTERESTS.

***In general***. The Debtor shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. The Debtor reserves the right to modify the Plan, in accordance with Article XI hereof to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment

4862-2664-5662, v. 3

applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

*"Toggle" nature of the Plan*. The Plan provides for either the (a) Refinancing Transaction where the Plan will be implemented through the refinancing of the Debtor's obligations and the resulting Refinancing Proceeds will fund payments under the Plan, (b) Joint Venture Transaction where the Plan will be implemented through the transfer of the Property to the Joint Venturer and the resulting Joint Venture Proceeds will fund payments under the Plan, or (c) if the Debtor is unable to refinance its debts or enter into Joint Venture Agreement, then the plan will toggle to the Auction, which will be held pursuant to the Bid Procedures and the resulting Sale Proceeds will fund payments under the Plan and mortgage and Note,. The Debtor will have up to 180 days to consummate a transaction (other than an Auction sale under the Bid Procedures).

### 4.1. *Secured Tax Claim (Class 1).*

(a) *Classification*: Class 1 consists of the Allowed Secured Tax Claim.

(b) *Treatment*: The holder of the Secured Tax Claim shall receive, in full and final satisfaction of such Claim, Cash from either the Refinancing Proceeds, Joint Venture Proceeds, or Sale Proceeds from the sale other than to the Mortgage Lender or its designee or assignee in an amount equal to such Claim, payable at Closing.

(c) *Voting*: Class 1 is Unimpaired, and the holder of the Secured Tax Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the holder of the Secured Tax Claim is not entitled to vote to accept or reject the Plan.

### 4.2. *Mortgage Claim (Class 2).*

(a) *Classification*: Class 2 consists of the Mortgage Claim held by the Mortgage Lender. The Mortgage Claim is a Secured Claim pursuant to the Note, which is secured by the Mortgage and constitutes a first-priority security interest on the Property.

(b) *Treatment*: The holder of the Mortgage Claim shall receive a gross amount of $32,500,000 in Cash at the Closing from a sale to someone other than the Mortgage Lender, the Refinancing Proceeds or Joint Venture Proceeds on or before May 14, 2024. However, if the Mortgage Lender does not receive the net amount of $32,500,000 in Cash at the Closing from the Refinancing Proceeds or Joint Venture Proceeds on a sale held and closed on or before May 14, 2024 then

16

Mortgage Lender is entitled to: (i) receive the full amount of the Mortgage Claim as of the Auction date under the Sale Transaction if sold to a Purchaser (that is not the Mortgage Lender, or its assignee, nominee, or designee) under the Sale Transaction or (ii) if the Mortgage Lender (or its assignee, nominee, or designee) is the Purchaser pursuant to a credit bid, the Mortgage Lender shall receive the Property.

(c)      *Voting*: Class 2 is Impaired, and holder of the Mortgage Claim in Class 2 is entitled to vote to accept or reject the Plan.

4.3    ***Other Secured Claims (Class 3).***

(a)      *Classification*: Class 3 consists of Other Secured Claims. To the extent that Other Secured Claims are secured by different collateral or different interests in the same collateral, such Claims shall be treated as separate subclasses of Class 3.

(b)      *Treatment*: Except to the extent that a holder of an Allowed Other Secured Claim against the Debtor has agreed to less favorable treatment of such Claim, each holder of an Allowed Other Secured Claim shall receive on the Effective Date, if either the Refinancing Proceeds, Joint Venture Proceeds, or Sale Proceeds exceed the aggregate amount of all senior Claims, the remaining Joint Venture Proceeds or Sale Proceeds, if any, after payment in full of all senior Claims including the Mortgage Claim, Allowed Administrative Claims (including Professional Fees), Allowed Administrative Tax Claims, Allowed Priority Claims, and Allowed Claims in Classes 1 through 2.

(c)      *Voting*: Class 3 is Impaired, and the holders of Other Secured Claims are entitled to vote to accept or reject the Plan.

4.4.    ***General Unsecured Claims (Class 4).***

(a)      *Classification*: Class 4 consists of General Unsecured Claims against the Debtor.

(b)      *Treatment*: Except to the extent that a holder of an Allowed General Unsecured Claim against the Debtor has agreed to less favorable treatment of such Claim, each holder of an Allowed General Unsecured Claim shall receive on the Effective Date, if the Refinancing Proceeds, Joint Venture Proceeds, or Sale Proceeds exceed the aggregate amount of all senior Claims, its Pro Rata share of the remaining Refinancing Proceeds, Joint Venture Proceeds or Sale Proceeds, if any, after (i) payment in full of all senior Claims including the Allowed Administrative Claims (including Professional Fees), Allowed Administrative Tax Claims, Allowed Priority Claims, and Allowed Claims in Classes 1 through 3. If the Mortgage Lender (or its assignee, nominee or designee) is the Purchaser based on a credit bid, the Mortgage Lender will provide a distribution of $75,000.00 to holders of Claims in

17

Class 4, which shall be shared by holders of General Unsecured Claim on a pro rata basis.

(c)    *Voting*: Class 4 is Impaired, and the holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

4.5.    ***Existing Equity Interests (Class 5).***

(a)    *Classification*: Class 5 consists of Existing Equity Interests in the Debtor.

(b)    *Treatment*: The holders of Existing Equity Interests will receive on the Effective Date their Pro-Rata share of the remaining Refinancing Proceeds, Joint Venture Proceeds, or Sale Proceeds, if any, after payment in full of all senior Claims including Allowed Administrative Claims (including Professional Fees), Allowed Administrative Tax Claims, Allowed Priority Claims, and Allowed Claims in Classes 1 through 4.

(c)    *Voting*: Class 5 is Impaired by the Plan, and the holders of the Allowed Existing Equity Interests are entitled to vote to accept or reject the Plan.

## SECTION 5. MEANS FOR IMPLEMENTATION.

5.1.    **Implementation of the Plan.**

The Mortgage Lender has agreed to accept a gross amount of $32,500,000.00 on account of its Mortgage Claim so long as such payment is made by May 14, 2024. If the Debtor is able to refinance its obligations and fund the Refinancing Proceeds or procure a Joint Venturer who can fund the Joint Venture Proceeds, then the Plan will be funded by either the Refinancing Proceeds or Joint Venture Proceeds and such proceeds will be made available for distribution to Creditors under the Plan.

If the Debtor is unable to obtain refinancing or find a Joint Venturer with sufficient net proceeds as required under the Plan, prior to the Effective Date, but no later than May 14, 2024, the Property will be sold at Auction to be held as soon as practicable after the Effective Date. In the event the Purchaser utilizes a credit bid, that bid may be assigned to any of Purchaser's nominee assign or designee. In the event of a credit bid for the Property, the party making the credit bid will fund Claims senior to those of the entity making the credit bid which will be satisfied by a Cash payment under the terms of this Plan. If there is no credit bid for the Property, the Property will be purchased only by a Cash bid at the Auction under the Bid Procedures approved by the Court. The Cash remaining after payment of the expenses of the Sale Transaction shall be made available for distribution to Creditors under the Plan. Notwithstanding the foregoing, Mortgage Lender (or its assignee, designee or nominee), although under no obligation to do so, is entitled to

18

credit bid up to and including the total amount of its Allowed Claim as of the Auction for the Property pursuant to 11 U.S.C. § 363(k). In the event Mortgage Lender is the successful bidder at the Auction, Mortgage Lender may assign its bid to its nominee assign or designee. Any Broker's fees, costs and/or commissions from either a Refinancing Transaction, Joint Venture Transaction, or Sale Transaction shall be paid from available proceeds. However, if the Mortgage Lender (or its assignee, nominee or designee) is the Purchaser, the Broker shall receive from Mortgage Lender the fixed amount of $70,000 and up to $20,000 for fees, expenses, and/or commissions from the Sale Transaction.

The Confirmation Order shall authorize and approve either the Refinancing Transaction, Joint Venture Transaction, or Sale Transaction under sections 365, 1123, 1129(b) and 1146(a) of the Bankruptcy Code.

5.2.   *Other Transactions.*

After the Effective Date, the Debtor may engage in any other transaction in furtherance of the Plan at the direction of the Post-Effective Date Debtor without any authorization by the Debtor's Existing Equity Interests.

5.3.   *Withholding and Reporting Requirements.*

(a)   *Withholding Rights.* In connection with the Plan, any party issuing any instrument or making any distribution described in the Plan shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions pursuant to the Plan and all related agreements shall be subject to any such withholding or reporting requirements. Notwithstanding the foregoing, each holder of an Allowed Claim or any other Person that receives a distribution pursuant to the Plan shall have responsibility for any taxes imposed by any Governmental Unit, including, without limitation, income, withholding, and other taxes, on account of such distribution. Any party issuing any instrument or making any distribution pursuant to the Plan has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

(b)   *Forms.* Any party entitled to receive any property as an issuance or distribution under the Plan shall, upon request, deliver to the Disbursing Agent or such other Person designated by the Debtor (which entity shall  subsequently deliver to the Disbursing Agent any applicable IRS Form W-8 or Form W-9 received) an appropriate Form W-9 or (if the payee is a foreign Person) Form W-8, unless such Person is exempt under the tax Code and so notifies the Disbursing Agent. If such request is made by the Debtor or such other Person designated by the Debtor and the holder fails to comply before the date that is 180 days after the

19

request is made, the amount of such distribution shall irrevocably revert to the Debtor and any Claim in respect of such distribution shall be discharged and forever barred from assertion against any Debtor and its respective property.

### 5.4.    *Exemption From Certain Transfer Taxes.*

To the maximum extent provided by section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer under this Plan as confirmed by the Court, (including an instrument of transfer executed in furtherance of the sale contemplated by the Plan), shall not be subject to tax under any law imposing a stamp tax, real estate transfer tax, mortgage recording tax or similar tax due on the sale or transfer of the Property in connection with or in furtherance of the Plan as confirmed by the Court and the funding requirements contained herein and shall not be subject to any state, local or federal law imposing such tax and the appropriate state or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### 5.5.    *Effectuating Documents; Further Transactions.*

On and after the Effective Date, the Debtor is authorized to and may issue, execute, deliver, file or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of the Plan in the name of and on behalf of the Debtor, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan. In addition, the Confirmation Order and order approving the Sale of the Property shall contain appropriate provisions, consistent with Section 1142 of the Bankruptcy Code that, among other things: (A) direct the Debtor to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of the Property to the Purchaser and to perform any act, including the satisfaction of any Lien, that is necessary for the consummation of this Plan and (B) if Debtor refuses to execute or deliver or join in the execution or delivery of any such instrument, the Mortgage Lender (or its nominee, assignee or designee), shall be authorized to execute, deliver or join in the execution or delivery of such instrument on the Debtor's behalf.

In addition, the Confirmation Order and order approving the Sale Transaction shall contain appropriate provisions, consistent with Section 1142 of the Bankruptcy Code that, among other things: (A) direct the Debtor to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of the Property to the Purchaser and to perform any act, including the

20

satisfaction of any Lien, that is necessary for the consummation of this Plan and (B) if Debtor refuses to execute or deliver or join in the execution or delivery of any such instrument, the Mortgage Lender (or its nominee, assignee or designee), shall be authorized to execute, deliver or join in the execution or delivery of such instrument on the Debtor's behalf.

If the Debtor unreasonably refuses to timely execute documents necessary to bring about Consummation of the Plan and the transactions contemplated by the Plan, the Mortgage Lender may file and serve, on ten written days prior notice, which notice shall include the documents the Mortgage Lender intends to execute, including, but not limited to the deed and other instruments necessary to consummate the conveyances called for under the Plan, and upon the expiration of such time, absent a court order to the contrary, the Mortgage Lender may then execute the documents attached to the notice as proposed by the Mortgage Lender.

    5.6.    *Preservation of Rights of Action.*

Other than Causes of Action against an Entity that are waived, relinquished, exculpated, released, compromised, or settled in the Plan or by a Bankruptcy Court order, the Debtor reserves any and all Causes of Action. On and after the Effective Date, the Debtor may pursue such Causes of Action in its sole discretion, other than any cause of action again the Mortgage Lender which is expressly waived. No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against them as any indication that the Debtor will not pursue any and all available Causes of Action against them except as to the waiver of Causes of Action against the Mortgage Lender. No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion (judicial, equitable, or otherwise), or laches, shall apply to such preserved Causes of Action upon, after, or as a consequence of the Confirmation or Consummation. Prior to the Effective Date, and on and after the Effective Date, the Debtor, shall retain and shall have, including through its authorized agents or representatives, the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court. Notwithstanding anything contained herein to the contrary, the settlement of any Claims and Causes of Action which are expressly to be settled by Confirmation of the Plan itself shall be resolved only by Confirmation of the Plan itself.

4862-2664-5662, v. 3

5.7.  *Release of Mortgage Lender and Guarantors.*

In consideration of their cooperation and assistance with the implementation of the Plan, as soon as practicable after the Confirmation Order becomes a Final Order and before the commencement of the Auction (if any),there shall be a mutual release between the Debtor and Guarantors on the one hand and the Mortgage Lender on the other, the form of which shall be substantially similar to a version that shall filed as part of Plan Supplement.

5.8.  *Closing of the Chapter 11 Case.*

After the Chapter 11 Case of the Debtor has been fully administered, the Debtor shall seek authority from the Bankruptcy Court to close such Debtor's Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

## SECTION 6.  GOVERNANCE

The Post-Effective Date Debtor shall continue to be managed by Nir Amsel.

## SECTION 7. DISTRIBUTIONS.

7.1.  *Distribution Record Date.*

As of the close of business on the Distribution Record Date, the transfer register for each of the Classes of Claims or Interests as maintained by the Debtor shall be deemed closed, and there shall be no further changes in the record of holders of any of the Claims or Interests. The Debtor shall have no obligation to recognize any transfer of the Claims or Interests occurring on or after the Distribution Record Date.

7.2.  *Date of Distributions.*

Except as otherwise provided herein, the Debtor shall make distributions to holders of Allowed Claims no later than the Effective Date and thereafter, the Debtor shall from time to time determine the subsequent Distribution Dates, if any. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day but shall be deemed to have been completed as of the required date.

The Debtor shall reserve an amount sufficient to pay holders of Disputed Claims the amount such holders would be entitled to receive under the Plan if such

22

Claims were to become Allowed Claims. In the event the holders of Allowed Claims have not received payment in full on account of their Claims after the resolution of all Disputed Claims, then the Debtor shall make a final distribution to all holders of Allowed Claims.

Notwithstanding anything to the contrary in the Plan, no holder of an Allowed Claim shall, on account of such Allowed Claim, receive a distribution in excess of the Allowed amount of such Claim plus any interest accruing on such Claim that is actually payable in accordance with the Plan.

7.3.    *Delivery of Distributions.*

In the event that any distribution to any holder is returned as undeliverable, no distribution to such holder shall be made unless and until the Debtor has determined the then current address of such holder, at which time such distribution shall be made to such holder without Interest; provided, however, such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six months from the date the Initial Distribution is made. After such date, all unclaimed property or interests in property shall revert (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary) to the Debtor automatically and without need for a further order by the Bankruptcy Court for distribution in accordance with the Plan and the Claim of any such holder to such property or interest in property shall be released, settled, compromised, and forever barred. The Debtor shall have no obligation to locate the current address for a returned distribution.

7.4.    *Manner of Payment Under Plan.*

At the option of the Debtor, any Cash payment to be made hereunder may be made by a check or wire transfer.

7.5.    *Minimum Cash Distributions.*

The Debtor shall not be required to make any payment to any holder of an Allowed Claim on any Distribution Date of Cash less than $100.00; provided, however, that if any distribution is not made pursuant to this Section 7.5, such distribution shall be added to any subsequent distribution to be made on behalf of the holder's Allowed Claim. The Debtor shall not be required to make any final distributions of Cash less than $50.00 to any holder of an Allowed Claim. If either (a) all Allowed Claims (other than those whose distributions are deemed undeliverable hereunder) have been paid in full or (b) the amount of any final distributions to holders of Allowed Claims would be $50.00 or less and the aggregate amount of Cash available for distributions to holders of Allowed General Unsecured Claims is less than $2,500, then no further distribution shall be made by

23

the Debtor and any surplus Cash shall be donated and distributed to an I.R.C. § 501(c)(3) tax-exempt organization selected by the Debtor.

7.6.    *Setoffs.*

The Debtor may, but shall not be required to, set off against any Claim, any Claims of any nature whatsoever that the Debtor may have against the holder of such Claim; provided that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such Claim the Debtor may have against the holder of such Claim.

7.7.    *Distributions After Effective Date.*

(a) Distributions made after the Effective Date to holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

(b) Distributions made within three (3) business days of the Effective Date shall be deemed to have been made on the Effective Date.

7.8.    *Allocation of Distributions Between Principal and Interest.*

Except as otherwise provided in this Plan, to the extent that any Allowed Claim entitled to a distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall be allocated to the principal amount (as determined for U.S. federal income tax purposes) of the Claim first, and then to accrued but unpaid interest unless a claim is governed by an agreement that provides otherwise in which case such agreement shall control.

7.9.    *Payment of Disputed Claims.*

As Disputed Claims are resolved pursuant to Section 8 hereof, the Debtor shall make distributions on account of such Disputed Claims as if such Disputed Claims were Allowed Claims as of the Effective Date. Such distributions shall be made on the first Distribution Date that is at least forty-five (45) days after the date on which a Disputed Claim becomes an Allowed Claim, or on an earlier date selected by the Debtor in the Debtor's sole discretion.

## SECTION 8. PROCEDURES FOR DISPUTED CLAIMS.

8.1.    *Allowance of Claims.*

After the Effective Date, the Debtor shall have and shall retain any and all rights and defenses that the Debtor had with respect to any Claim, except with

4862-2664-5662, v. 3

respect to any Claim deemed Allowed under this Plan. Except as expressly provided in this Plan or in any order entered in the Chapter 11 Case prior to the Effective Date (including, without limitation, the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed under this Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including, without limitation, the Confirmation Order, in the Chapter 11 Case allowing such Claim.

8.2. *Objections to Claims.*

As of the Effective Date, objections to and requests for estimation of, Claims against the Debtor may be interposed and prosecuted only by the Debtor. Such objections and requests for estimation shall be served and filed (a) on or before the 60th day following the later of (i) the Effective Date and (ii) the date that a proof of Claim is filed or amended or a Claim is otherwise asserted or amended in writing by or on behalf of a holder of such Claim, or (b) such later date as ordered by the Bankruptcy Court upon motion filed by the Debtor.

8.3. *Estimation of Claims.*

The Debtor may at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtor previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtor may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

8.4. **No Distributions Pending Allowance as to Disputed Portion of Claim**.

If an objection to a Claim is filed as set forth in Section 8, no payment or distribution provided under the Plan shall be made on account of the disputed

portion of such Claim unless and until such disputed portion of such claim is resolved by the Court.

8.5.    *Resolution of Claims*.

Except as otherwise provided herein, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with this Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Debtor shall retain and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all Claims, Disputed Claims, rights, Causes of Action, suits and proceedings, whether in law or in equity, whether known or unknown, that the Debtor or their estates may hold against any Person, without the approval of the Bankruptcy Court, the Confirmation Order, and any contract, instrument, release, indenture, or other agreement entered into in connection herewith. The Debtor may pursue such retained Claims, rights, Causes of Action, suits or proceedings, as appropriate, in accordance with the best interests of the Debtor and this Plan.

8.6.    *Disallowed Claims*.

All Claims held by persons or entities against whom or which the Debtor has commenced a proceeding asserting a Cause of Action under sections 542, 543, 544, 545, 547, 548, 549 and/or 550 of the Bankruptcy Code shall be deemed "disallowed" Claims pursuant to section 502(d) of the Bankruptcy Code and holders of such Claims shall not be entitled to vote to accept or reject the Plan. Claims that are deemed disallowed pursuant to this section shall continue to be disallowed for all purposes until the Avoidance Action against such party has been settled or resolved by Final Order and any sums due to the Debtor from such party have been paid.

## SECTION 9.  EXECUTORY CONTRACTS AND UNEXPIRED LEASES.

9.1.    *Rejection of Executory Contracts and Unexpired Leases*

On the Effective Date, except as otherwise provided in the Plan or the Purchase Agreement, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned or for which an assumption is then pending shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code.

9.2.    *Claims Based on Rejection of Executory Contracts and Unexpired Leases*

Unless otherwise provided by an order of the Bankruptcy Court, any Proofs of Claim based on the rejection of the Debtor's Executory Contracts or Unexpired Leases pursuant to the Plan or otherwise, must be filed with Bankruptcy Court and

26

served on the Debtor no later than thirty (30) days after the earlier of the Effective Date or the effective date of rejection of such Executory Contract or Unexpired Lease. In addition, any objection to the rejection of an Executory Contract or Unexpired Lease must be filed with the Bankruptcy Court and served on the Debtor, no later than thirty (30) days after service of the Debtor's proposed rejection of such Executory Contract or Unexpired Lease.

**Any holders of Claims arising from the rejection of an Executory Contract or Unexpired Lease for which Proofs of Claims were not timely filed as set forth in the paragraph above shall not (1) be treated as a creditor with respect to such Claim, (2) be permitted to vote to accept or reject the Plan on account of any Claim arising from such rejection, or (3) participate in any distribution in the Chapter 11 Case on account of such Claim, and any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtor, Debtor's Estate, or the property for any of the foregoing without the need for any objection by the Debtor or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully compromised, settled, and released, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.** All Allowed Claims arising from the rejection of the Debtor's prepetition Executory Contracts or prepetition Unexpired Leases shall be classified as General Unsecured Claims, except as otherwise provided by order of the Bankruptcy Court.

9.3. *Reservation of Rights.*

Neither the exclusion nor inclusion of any contract or lease in the Plan Supplement, if any, nor anything contained in the Plan, shall constitute an admission by the Debtor that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtor's Estate have any liability thereunder. In the event of a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtor shall have 60 days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease as otherwise provided in the Plan.

4862-2664-5662, v. 3

## SECTION 10.        CONDITIONS PRECEDENT TO THE EFFECTIVE DATE.

### 10.1   *Conditions Precedent to the Effective Date.*

The occurrence of the Effective Date of the Plan is subject to the following conditions precedent:

(a)    the Bankruptcy Court shall have entered the Confirmation Order, the Confirmation Date shall have occurred and the Confirmation Order shall not be subject to any stay;

(b)    all actions, documents, and agreements necessary to implement and consummate the Plan, including, without limitation, entry into the documents contained in the Plan Supplement, if any, required to be executed prior to the Confirmation Date, each in form and substance reasonably satisfactory to the Debtor and Purchaser, and the transactions and other matters contemplated thereby, shall have been executed;

(c)    all governmental and third-party approvals and consents, including Bankruptcy Court approval, necessary in connection with the transactions contemplated by the Plan, if any, shall be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent or otherwise impose materially adverse conditions on such transactions;

(d)    all documents and agreements necessary to implement the Plan shall have (i) been tendered for delivery and (ii) been effected or executed by all Entities party thereto, and all conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements; and

(e)    The Debtor shall have closed the Refinancing, Joint Venture Transaction or the Sale Transaction, if applicable.

### 10.2.   *Waiver of Conditions Precedent.*

Each of the conditions precedent to the Effective Date in Section 10.1 other than the condition set forth in section 10.1(a) may be waived in writing made by the Debtor, with prior consent of the Mortgage Lender, and filed with the Court.

### 10.3.   *Effect of Failure of Conditions to Effective Date.*

4862-2664-5662, v. 3

If the Confirmation Order is vacated due to a failure of a condition to the Effective Date to occur, (i) no distributions under the Plan shall be made and (ii) the Debtor and all holders of Claims and Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date ever occurred.

## SECTION 11.        EFFECT OF CONFIRMATION.

### 11.1. *Vesting of Assets.*

Under the Restructuring Transaction, on the Closing, the Property shall vest in the Post-Effective Date Debtor, free and clear of all liens, Claims and encumbrances, subject only to the mortgage granted in favor of the Post-Effective Date Debtor, if any. As of the Closing, any and all Liens, Claims and encumbrances that have not been expressly preserved under the Plan shall be deemed extinguished. Any other assets of the Debtor shall vest in the Post-Effective Debtor free and clear of all Liens, Claims and encumbrances.

Under either the Joint Venture Transaction or Sale Transaction, on the Closing, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, and as set forth in either the Joint Venture Agreement or the Purchase Agreement, as applicable, all property of the Debtor's Estate shall vest in either the Joint Venturer or the Purchaser, as applicable, free and clear of all Claims, Liens, encumbrances, charges and other interests, except as provided pursuant to this Plan and the Confirmation Order.

### 11.2. *Release of Liens.*

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, and compromised and all rights, titles, and interests of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall revert to the Debtor, unless sold to the Joint Venturer or Purchaser pursuant to the Joint Venture Transaction or Sale Transaction, provided however, that the Lien securing the Mortgage Claim shall not be deemed released until the Class 2 Mortgage Claim has been paid from either the Refinancing Proceeds, Joint Venture Proceeds, or Sale Proceeds in accordance with the terms of this Plan; provided, however, the Mortgage may assigned to the Purchaser.

### 11.3. *Subordinated Claims.*

29

The allowance, classification, and treatment of all Allowed Claims and
Interests and the respective distributions and treatments under the Plan take into
account and conform to the relative priority and rights of the Claims and Interests
in each Class in connection with any contractual, legal, and equitable subordination
rights relating thereto, whether arising under general principles of equitable
subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to
section 510 of the Bankruptcy Code, the Debtor reserves the right to re-classify any
Allowed Claim or Interest in accordance with any contractual, legal, or equitable
subordination relating thereto.

### 11.4.  *Binding Effect.*

Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code
and subject to the occurrence of the Effective Date, on and after the Effective Date,
the provisions of the Plan shall bind any holder of a Claim against, or Interest in,
the Debtor, and such holder's respective successors and assigns, whether or not the
Claim or Interest of such holder is Impaired under the Plan and whether or not
such holder has accepted the Plan.

### 11.5.  *Term of Injunctions or Stays.*

Unless otherwise provided, all injunctions or stays arising under or entered
during the Chapter 11 Case under section 105 or 362 of the Bankruptcy Code, or
otherwise, and in existence on the Confirmation Date, shall remain in full force and
effect until the later of the Effective Date and the date indicated in the order
providing for such injunction or stay.

### 11.6.  *Plan Injunction.*

**Except (i) as otherwise provided under Final Order entered by the
Bankruptcy Court or (ii) with respect to the Debtor's obligations under the Plan, the
entry of the Confirmation Order shall forever stay, restrain and permanently enjoin
with respect to any Claim held against the Debtor as of the date of entry of the
Confirmation Order (i) the commencement or continuation of any action, the
employment of process, or any act to collect, enforce, attach, recover or offset from
the Debtor, from the Property, or from property of the Estate that has been or is to
be distributed under the Plan, and (ii) the creation, perfection or enforcement of any
Lien or encumbrance against the Property and any property of the Estate that has
been or is to be, distributed under the Plan.  Except as otherwise provided in the
Confirmation Order, the entry of the Confirmation Order shall constitute an
injunction against the commencement or continuation of any action, the
employment of process, or any act to collect, recover or offset from the Debtor, from
the Property, or from property of the Estate, any claim, any obligation or debt that
was held against the Debtor by any person or entity as of the Confirmation Date**

except pursuant to the terms of this Plan. The entry of the Confirmation Order shall permanently enjoin all Creditors, their successors and assigns, from enforcing or seeking to enforce any such Claims.

### 11.7. *Limitation of Liability.*

To the extent permitted under Section 1125(e) of the Bankruptcy Code, neither the Exculpated Parties  nor any of their respective officers, directors, or employees (acting in such capacity) nor any professional person employed by any of them, shall have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, Confirmation or consummation of the Plan, the Disclosure Statement, the Plan Supplement or the  any contract, instrument, release or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with the Plan, provided that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning his, her, or its duties pursuant to, or in connection with, the Plan or any other related document, instrument, or agreement, except in the case of fraud, gross negligence, willful misconduct, malpractice, breach of fiduciary duty, criminal conduct, unauthorized use of confidential information that causes damages, or ultra vires acts.   Nothing in this Section 11.8 shall limit the liability of the Debtor's professionals pursuant to Rule 1.8 (h)(1) of the New York State Rules of Professional Conduct. Nothing in the Plan or the confirmation order shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including, without limitation, any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Debtor or any of its respective members, shareholders, officers, directors, employees, attorneys, advisors, agents, representatives and assigns, nor shall anything in the Plan enjoin the United States or any state or local authority from bringing any claim, suit, action or other proceedings against the Debtor or any of its respective members, officers, directors, employees, attorneys, advisors, agents, representatives and assigns for any liability whatever, including without limitation, any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state or local authority, nor shall anything in this Plan exculpate Debtor or any of its respective members, officers, directors, employees, attorneys, advisors, agents, representatives and assigns from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority.

4862-2664-5662, v. 3

11.8.  *Release.*

Except as otherwise provided in the Plan, upon the Effective Date, in consideration of the Cash and other property to be distributed to or on behalf of the holders of Claims and Interests under the Plan, the Plan shall be deemed to resolve all disputes and constitute a settlement and release, between and among the Debtor, on the one hand, and each Creditor and Interest Holder, on the other, from any claim or liability, whether legal, equitable, contractual, secured, unsecured, liquidated, unliquidated, disputed, undisputed, matured, unmatured, fixed or contingent, known or unknown, that the Debtor, its Creditors or Interest Holder ever had or now have through the Effective Date in connection with their Claim or Interest (including, without limitation, any claims the Debtor may assert on its own behalf or on behalf of Creditors or Interest Holders pursuant to sections 510 and 542 through 553 of the Bankruptcy Code, any claims Creditors or Interest Holders may have asserted derivatively on behalf of the Debtor absent bankruptcy, any claims based on the conduct of the Debtor's business affairs prior or subsequent to the commencement of the Case or any claims based on the negotiation, submission and confirmation of the Plan).

11.9.  *Solicitation of the Plan.*

As of and subject to the occurrence of the Confirmation Date, the Debtor shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including without limitation, sections 1125(a) and (e) of the Bankruptcy Code, and any applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with such solicitation.

11.10.  *Plan Supplement.*

The Plan Supplement, if any, shall be filed with the Clerk of the Bankruptcy Court by no later than five (5) business days prior to the Confirmation Hearing. Upon its filing with the Bankruptcy Court, the Plan Supplement may be inspected in the office of the Clerk of the Bankruptcy Court during normal court hours.

## SECTION 12.   RETENTION OF JURISDICTION.

On and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under, and related to the Chapter 11 Case for, among other things, the following purposes:

(a)   to hear and determine motions and/or applications for the assumption or rejection of Executory Contracts or Unexpired Leases and the allowance, classification, priority, compromise, estimation or payment of Claims resulting there from;

(b)     to determine any motion, adversary proceeding, application, contested matter, or other litigated matter pending on or commenced after the Confirmation Date;

(c)     to ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

(d)     to consider Claims or the allowance, classification, priority, compromise, estimation or payment of any Claim;

(e)     to enter, implement or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified or vacated;

(f)     to enter the Confirmation Order and adjudicate any dispute related to such order, the Sale and Bidding Procedures, the Sale Transaction or the Auction of the Property;

(g)     to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the Consummation, implementation or enforcement of the Plan, including the Confirmation Order, or any other order of the Bankruptcy Court;

(h)     to hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(i)     to hear and determine all applications under sections 330, 331, and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred before the Confirmation Date;

(j)     to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Purchase Agreement, or the Confirmation Order or any agreement, instrument, or other document governing or relating to any of the foregoing;

(k)     to take any action and issue such orders as may be necessary to construe, interpret, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following Consummation;

(l)     to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(m)    to hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code (including any requests for expedited determinations of the Debtor's tax liability under section 505(b) of the Bankruptcy Code);

(n)    to adjudicate, decide or resolve any and all matters related to section 1141 of the Bankruptcy Code;

(o)    to adjudicate any and all disputes arising from or relating to distributions under the Plan;

(p)    to hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

(q)    to enter a final decree closing the Chapter 11 Case;

(r)     to enforce all orders previously entered by the Bankruptcy Court;

(s)    to recover all assets of the Debtor and property of the Debtor's Estate, wherever located; and

(t)    to hear and determine any rights, Claims or Causes of Action held by or accruing to the Debtor pursuant to the Bankruptcy Code or pursuant to any federal statute or legal theory.

## SECTION 13.          MISCELLANEOUS PROVISIONS.

### 13.1. *Payment of Statutory Fees.*

On the Effective Date and thereafter as may be required, the Debtor shall pay all fees incurred pursuant to § 1930 of title 28 of the United States Code, together with interest, if any, pursuant to § 3717 of title 31 of the United States Code for the Debtor's case; provided, however, that after the Effective Date such fees shall only be payable with respect to the Debtor's Case until such time as a final decree is entered closing the Debtor's Case, a Final Order converting such case to a case under chapter 7 of the Bankruptcy Code is entered or a Final Order dismissing the Debtor's Case is entered.

### 13.2. *Substantial Consummation*.

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

13.3. *Amendments.*

(a)    *Plan Modifications.* The Plan may be amended, modified or supplemented by the Debtor in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code; provided that such amendments, modifications, or supplements shall be satisfactory in all respects to the Debtor and the Mortgage Lender. In addition, after the Confirmation Date, the Debtor may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of the Plan.

(b)    *Other Amendments.* Before the Effective Date, the Debtor may make appropriate technical adjustments and modifications to the Plan and the documents contained in the Plan Supplement without further order or approval of the Bankruptcy Court.

13.4. *Revocation or Withdrawal of the Plan.*

The Debtor, with the consent of the Mortgage Lender, reserves the right to revoke or withdraw the Plan, prior to the Confirmation Date. If the Debtor revokes or withdraws the Plan, or if Confirmation or Consummation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Debtor, the Debtor's Estates, or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtor, the Debtor's Estates, or any other Entity.

13.5. *Severability of Plan Provisions upon Confirmation*.

If, before the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtor with the consent of the Mortgage Lender, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in

35

no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtor; and (3) nonseverable and mutually dependent.

### 13.6. *Governing Law.*

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto or a schedule in the Plan Supplement provides otherwise, the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws thereof.

### 13.7. *Time.*

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

### 13.8. *Additional Documents.*

On or before the Effective Date, the Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtor and all holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

### 13.9. *Immediate Binding Effect.*

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and Plan Supplement shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtor, the Purchaser, the holders of Claims and Interests, the Released Parties, the Exculpated Parties, and each of their respective successors and assigns.

### 13.10. *Successor and Assigns*.

The rights, benefits and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or permitted assign, if any, of each Entity.

13.11. *Entire Agreement*.

On the Effective Date, the Plan, the Plan Supplement, the Purchase Agreement, and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings and representations on such subjects, all of which have become merged and integrated into the Plan.

13.12. *Notices.*

All notices, requests and demands to or upon the Debtor to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

(i) if to the Debtor:
500 Summit Avenue Mazal LLC
345 Seventh Avenue
New York, New York 10001
Attn: Nir Amsel

- and –

Leech Tishman Robinson Brog, PLLC
875 Third Avenue, 9th Floor
New York, New York 10022
Telephone: (212) 603-6300
Attention: Fred B. Ringel., Esq.

After the Effective Date, the Debtor shall have the authority to send a notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, that they must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Debtor is authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have filed such renewed requests.

[Signature On Next Page]

37

Dated:  January 26, 2024
         New York, New York

                              500 SUMMIT AVENUE MAZAL LLC


                              By:/s/ Nir Amsel⎯⎯⎯⎯⎯⎯
                              Nir Amsel
                              Manager

4862-2664-5662, v. 3

## Exhibit 1

**Bid Procedures**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

In re:                                         Chapter 11

**500 SUMMIT AVENUE MAZAL LLC,**               Case No.: 23-11831 (LGB)

                            Debtor.
------------------------------------------------------------X

## <u>BID PROCEDURES FOR AUCTION SALE</u>

The following bid procedures ("**Bid Procedures**")[1] will govern the Auction (as defined below) for the sale (**"Sale"**) of the real property and improvements located at 4, 8 and 10 West Street, Jersey City, NJ 07306 (Block: 9604, Lot(s): 11, 12 and 13); 11 West Street, Jersey City, NJ 07306 (Block: 9605, Lot: 2.01); 9 West Street, Jersey City, NJ 07306 (Block: 9605, Lot: 3); 506 Summit Avenue, Jersey City, NJ 07306 (Block: 9605, Lot: 4); and 225 Baldwin Avenue, Jersey City, NJ 07306 (Block: 10803, Lot: 27.01) (collectively, "**Property**") to be sold pursuant to a plan of reorganization filed by 500 Summit Avenue Mazal LLC ("**Debtor**"), in its chapter 11 case pending subject to higher or better Qualified Bids (as defined herein) received by the Debtor. These Bid Procedures describe, among other things: (i) the procedures for bidders to submit bids for the Property; (ii) the manner in which bidders and bids become Qualified Bidders and Qualified Bids (each as defined herein); (iii) the negotiation of bids received; (iv) the conduct of an auction ("**Auction**"); and (v) the ultimate selection of the Successful Bidder (as defined herein) and Court approval thereof (collectively, "**Bidding and Auction Process**").

500 Summit Avenue LLC ("**Mortgage Lender**") holds a first priority mortgage on the Property. The Mortgage Lender (or its nominee, designee or assignee) is entitled to credit bid  up to and including the total amount of its Allowed claim as of the Auction for the Property pursuant to 11 U.S.C. § 363(k).  The Mortgage Lender has made no determination as to whether it will credit bid and if it does, in what amount. In the event Mortgage Lender is the successful bidder at the Auction, Mortgage Lender may assign its bid to its nominee assign or designee. Any Broker's fees, costs and/or commissions from either a Refinancing Transaction, Joint Venture Transaction, or Sale Transaction shall be paid from the Sale Proceeds. However, if the Mortgage Lender (or its assignee, nominee or designee) is the Purchaser, the

---

[1] Capitalized terms not defined herein shall have the same meanings ascribed to the terms in the Plan.

1

Broker shall receive from Mortgage Lender the fixed amount of $70,000 and up to $20,000 for fees, expenses, and/or commissions from the Sale Transaction.

The Property shall be sold as is, where is, without any representation or warranty of any type whatsoever. In addition, the Sale of the Property shall be free and clear of all liens, claims, encumbrances, and interests except that pursuant to the Plan, the Successful Bidder may take the Property subject to the Mortgage Lender's mortgage, at the Mortgage Lender's sole and absolute discretion. All unexpired leases and executory contracts (if any) shall be rejected pursuant to Section 9 of the Plan.

The Debtor reserves the right to extend any of the bidding deadlines or other dates set forth in these Bid Procedures, without further order of the Bankruptcy Court subject to providing notice as described below.

## Summary of Important Dates

| [], 2024 at 4:00 p.m. (Eastern Time) | Bid Deadline |
|---|---|
| [], 2024 at 12:00 p.m. (Eastern Time) | Qualified Bid Designation Date |
| [], 2024 at 5:00 p.m. (Eastern Time) | Deadline to file Stalking Horse Notice |
| [], 2024 at 12:00 p.m. (Eastern Time) | Deadline to file Written Objections to Stalking Horse Notice on Court's Docket |
| [], 2024 at 5:00 p.m. (Eastern Time) | Telephonic Hearing before Judge Beckerman on Objections to Stalking Horse Notice |
| [], 2024 at 11:00 a.m. Eastern Time) | Auction for Property (if other Qualified Bids received) to be held via video conference |
| [], 2024 | Date for Debtor to file and serve Notice of Auction Results, with respect to Successful Bidder (if applicable, and if Auction held) |

## Auction Qualification Procedures

Bid Deadline

A Potential Bidder that desires to make a bid on the Property shall deliver written and electronic copies of its bid in <u>both</u> PDF and MS-WORD format to the

2

Bid Notice Parties (as defined herein) so as to be received no later than [], 2024 at
**4:00 p.m. (Eastern Time)** ("**Bid Deadline**"); <u>provided that</u> the Debtor may extend the
Bid Deadline for any reason whatsoever, in its reasonable business judgment, for
all or certain Potential Bidders, without further order of the Bankruptcy Court.

**Any party that does not submit a bid by the applicable Bid Deadline will not
be allowed to (i) submit any offer after the Bid Deadline or (ii) participate in the
Auction**.

<u>Communications with Potential Bidders</u>

There must be <u>no</u> communications between and amongst Potential Bidders
unless the Debtor has previously authorized such communication in writing. The
Debtor reserves the right, in its reasonable business judgment, to disqualify any
Potential Bidder(s) that have communications between and amongst themselves.

<u>Form and Content of Qualified Bids</u>

A "**Bid**" as used herein is a signed document from a Potential Bidder received
by the Bid Deadline that identifies the purchaser by its legal name (including any
equity holders or other financial backers, if the Potential Bidder is an entity formed
for the purpose of submitting bids or consummating the Sale), and any other party
that will be participating in connection with the bid or the Sale, and includes, at a
minimum, the following information:

    a. <u>Proposed Price</u>. The Bid must identify the price, in U.S. dollars, that
the Potential Bidder associates with the Property and a description
of any significant assumptions on which such valuations are based
(including a separate identification of the cash and non-cash
components, if any, of the valuation).

    b. <u>Proposed APA</u>. Each Bid must include a copy of an asset purchase
agreement reflecting the terms and conditions of the Bid, which
agreement must be marked to show any proposed amendments and
modifications from the form Asset Purchase Agreement[2] or the
stalking horse asset purchase agreement, if any, provided by the
Debtor ("**Proposed APA**"); provided, however, that all Bids must be
contingency free.

    c. <u>Unconditional Offer; No Financial Contingency</u>. A statement that
the Bid is formal, binding, and unconditional (except for those

---

[2] A form Asset Purchase Agreement will be included as part of the Plan Supplement.

3

conditions expressly set forth in the applicable Proposed APA), is not subject to any due diligence or financing contingency, and is irrevocable until the first business day following the closing of the proposed Sale, except as otherwise provided in these Bid Procedures. To the extent that a Bid is not accompanied by evidence of the Potential Bidder's capacity to consummate the Sale set forth in its Bid with cash on hand (or other immediately available cash), each Bid must include committed financing documented to the Debtor's satisfaction, that demonstrates that the Potential Bidder has received sufficient debt and/or equity funding commitments to satisfy the Potential Bidder's purchase price and other financial obligations under its Bid.

d.  <u>Form of Consideration</u>.

(i)  <u>All-Cash Offer</u>.  Unless the Bid includes a Credit Bid, a statement confirming that the Bid is based on an all-cash offer, sufficient cash consideration to pay the Break-Up Fee (as such terms are defined in the Stalking Horse Agreement, if any) and to meet the Minimum Overbid Amount (as defined herein); <u>provided</u> <u>that</u> any bid that includes a Credit Bid shall also include a cash component sufficient to pay, and earmarked exclusively for the payment of, any applicable Break-Up Fee, any carve out, and all obligations secured by valid, perfected, and unavoidable liens on the Property.

(ii)  <u>Credit Bidding</u>.  In connection with the Sale, a person or entity may seek to credit bid all or a portion of their secured claims for their respective collateral (each such bid, a "**Credit Bid**") pursuant to section 363(k) of the Bankruptcy Code; <u>provided that</u> the Credit Bid shall include cash consideration sufficient to pay all senior Claims, including Administrative Expense Claim, claims for which there are valid, perfected, and unavoidable liens on any Property included in such Bid that are senior in priority to those of the party seeking to Credit Bid in full (and complies with any orders of the Bankruptcy Court approving debtor-in-possession financing or use of cash collateral, and, if applicable, an amount sufficient to pay a break-up fee.  A Credit Bid shall not require a Deposit (as defined herein).

4

e.   <u>Purchase Price; Minimum Bid</u>.

(i)   <u>Minimum Bid</u>.  Except as otherwise provided herein, each Bid submitted must (a) exceed the Purchase Price, the Break-Up Fee, if any, and any Minimum Overbid Amount set by the Debtor, and (b) propose an alternative transaction that provides substantially similar or better terms than the Stalking Horse Bid, if any, as determined by the Debtor.

(ii)  <u>No Entitlement to Expense Reimbursement or Other Amounts</u>.  Except as may be provided with respect to a Stalking Horse Bidder, if any, a statement that the Bid does not entitle the Potential Bidder to any breakup fee, termination fee, expense reimbursement, or similar type of payment or reimbursement and a waiver of any substantial contribution administrative expense claim under section 503(b) of the Bankruptcy Code related to bidding for the Property.

f.   <u>Representations and Warranties</u>. Each Bid must include the following representations and warranties:

(i)   a statement that the Potential Bidder has had an opportunity to conduct any and all due diligence regarding the Property prior to submitting its Bid;

(ii)  a statement that the Potential Bidder has relied solely upon its own independent review, investigation, and/or inspection of any relevant documents in making its Bid and did not rely on any written  or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express or implied, by operation of law or otherwise, regarding the Property or the completeness of any information provided in connection therewith, except as expressly stated in the representations and warranties contained in the Potential Bidder's Proposed APA ultimately accepted and executed by the Debtor;

(iii) a statement that the Potential Bidder agrees to serve as Back-Up Bidder (as defined herein), if its Bid is selected as the next highest or next best bid after the Successful Bid with respect to the Property, until the Back-Up Bid Termination Date (as defined herein);

5

      (iv)   a statement that the Potential Bidder has not engaged in any collusion with respect to the submission of its Bid;

      (v)   a statement that all proof of financial ability to consummate the Sale in a timely manner and all information provided to support its financial ability to consummate the Sale is true and correct; and

      (vi)   a statement that the Potential Bidder agrees to be bound by the terms of these Bid Procedures.

A Potential Bidder must also accompany its Bid with:

    a.  a Deposit (as defined herein);

    b.  the contact information of the specific person(s) whom the Debtor or their advisors should contact in the event that the Debtor has any questions or wish to discuss the Bid submitted by the Potential Bidder;

    c.  written evidence of available cash, a commitment for financing (not subject to any conditions), and such other evidence of ability to consummate the transaction contemplated by the applicable Proposed APA, as acceptable in the Debtor's business judgment and following consultation with the Consultation Parties, including a description of each investor and any additional party or parties investing in the transaction included in the applicable Bid and such party's financial position;

    d.  a copy of a board resolution or similar document demonstrating the authority of the Potential Bidder to make a binding and irrevocable Bid on the terms proposed and to consummate the transaction contemplated by the Proposed APA;

    e.  a signed asset purchase agreement and statement that such Bid is irrevocable until the first business day following the closing of the Sale, and that the Potential Bidder agrees to serve as a Back-Up Bidder;

    f.  A full disclosure of the identity of each entity that will be bidding for the Property or otherwise participating in connection with such bid on behalf of the Potential Bidder, the terms of any such participation (including if the Potential Bidder is an entity formed for the purpose of consummating the proposed transaction contemplated by the bid, the equity holder or other financial backer); and

6

g.  Other information reasonably requested by the Debtor or Broker.

The submission of a Bid by the Bid Deadline shall constitute a binding and irrevocable offer to acquire the Property reflected in such Bid.

Deposit

To qualify as a Qualified Bid (as defined herein), each Bid (other than any Credit Bid) must be accompanied by a good faith cash deposit in the amount of ten percent (10%) of the proposed purchase price ("**Deposit**"), to be deposited, prior to the Bid Deadline, with Debtor's counsel ("**Escrow Agent**") to be held in their IOLA escrow account in accordance with the terms of these Bid Procedures ("**Escrow Agreement**").

To the extent the Qualified Bid is modified at or prior to the Auction, the Qualified Bidder must adjust its Deposit so that it equals ten percent (10%) of the purchase price proposed to be paid for the Property prior to the Auction.

Review of Bids and Designation of Qualified Bidders

A Bid received for the Property that is determined by the Debtor, to meet the requirements set forth in the preceding section will be considered a "**Qualified Bid**," any bidder that submits a Qualified Bid (including the Stalking Horse Bid, if any) will be considered a "**Qualified Bidder**."

The Debtor may, amend or waive the conditions precedent to being a Qualified Bidder at any time, in their reasonable business judgment, in a manner consistent with their fiduciary duties and applicable law, and may engage in negotiations with Potential Bidders who submitted Bids complying with the preceding section as the Debtor deems appropriate in the exercise of their business judgment, based upon the Debtor's evaluation of the content of each Bid.

The Debtor will make a determination regarding which Bids qualify as Qualified Bids, and will notify Potential Bidders whether they have been selected as Qualified Bidders by no later than [], 2024 at 12:00 p.m. (Eastern Time) ("**Qualified Bid Designation Date**"). If, however, no such other Qualified Bid (other than Mortgage Lender's credit bid) is received by the Qualified Bid Designation Date with respect to the Property, then the Auction will not be held as to the Property, and Broker shall so notify the Mortgage Lender no later than one (1) business day after the Qualified Bid Designation Date and the Debtor shall proceed to seek approval of the Bankruptcy Court of the sale of such Property to the Mortgage Lender (or its nominee, designee, or assignee) based on the Mortgage Lender's credit bid.

The Debtor reserves the right to work with any Bidder in advance of the

7

Auction to improve any Bid or cure any deficiencies in a Bid that is not initially deemed a Qualified Bid. If a Bid is received and, in the Debtor's judgment it is not clear whether the Bid is a Qualified Bid, the Debtor may consult with the Potential Bidder and seek additional information or revisions in an effort to establish whether or not the Bid is a Qualified Bid.

Notwithstanding anything herein to the contrary, the Mortgage Lender, or its nominee, designee or assignee is a Qualified Bidder and, although under no obligation to do so, is entitled to credit bid up to and including the total amount of its Allowed claim as of the Auction for the Property pursuant to 11 U.S.C. § 363(k), without the need for any deposit or fulfilling the other requirements for a Potential Bidder to be a Qualifying Bidder.

<u>Right to Designate a Stalking Horse</u>

No later than 5:00 p.m. on [], 2024 ("**Stalking Horse Notice Deadline**") the Debtor reserves the right to designate a bidder as a stalking horse bidder ("**Stalking Horse Bidder**") subject to the terms herein. The Debtor may offer a breakup fee of up to 2% of the purchase price ("**Break-Up Fee**") to the Stalking Horse Bidder.[3]

In the event the Debtor designates a bidder as a Stalking Horse Bidder, the Debtor will file a supplemental notice ("**Stalking Horse Notice**") with the Court by the Stalking Horse Notice Deadline identifying the Stalking Horse Bidder and the terms of the Stalking Horse Bid, including the terms and conditions for payment of any Break-Up Fee. Any entity wishing to object to the Stalking Horse Bidder shall have until **12:00 p.m. on [], 2024 (Stalking Horse Objection Deadline**") to file a written objection ("**Objection**") with the Court on its docket and serve it on the Notice Parties. In the event an Objection is timely filed and served and such Objection cannot be resolved consensually, the Court will hold an expedited telephonic hearing at **5:00 p.m. on [], 2024** to adjudicate the Objection.

If no Objections to the Stalking Horse Notice are received, the Stalking Horse Bid and the Break-Up Fee, shall be deemed approved by the Court, without the need for a Court order. In the event the Debtor chooses a Stalking Horse Bidder, the Stalking Horse Bid will be deemed a Qualified Bid.

---

[3] Should the Property be purchased pursuant to a credit bid by the Mortgage Lender (or its designee, assignee or nominee), no Break-Up Fee will be due.

8

## Pre-Auction Procedures

Determination and Announcement of Baseline Bid

In the event there is no Stalking Horse, the "Baseline Bid" shall be $33,852,489.[4]

## Auction Procedures

If there are two or more Qualified Bids for the Property, the Debtor will conduct an Auction on ⬚, 2024 via videoconference or such other time and place as the Debtor determines and the Debtor may notify Qualified Bidders who have submitted Qualified Bids. Only a Qualified Bidder will be eligible to participate at the Auction, subject to such limitations as the Debtor may impose in good faith. Professionals will be permitted to attend and observe the Auction.

At the Auction, if held, Qualified Bidders (including the Stalking Horse Bidder, if any) will be permitted to increase their Bids. Bidding will start at the purchase price and terms proposed in the Baseline Bid plus any Break-Up Fee plus $50,000.00 (a "**Minimum Overbid Amount**") and will proceed thereafter in increments to be announced not to exceed $100,000.00. The Debtor reserves the right to increase or decrease the Minimum Overbid Amount at any time during the Auction so long as it does not exceed the figures set forth above. The Stalking Horse Bidder is authorized to increase its respective Bid at the Auction.

The Debtor may adopt rules for the Auction at any time that the Debtor reasonably determine to be appropriate to promote the goals of the Bidding and Auction Process. At the start of the Auction, the Debtor shall describe the terms of the Baseline Bid. Any rules adopted by the Debtor will not unilaterally modify any of the terms of the Stalking Horse Bid, if any (as may be consensually modified at the Auction) without the consent of the Stalking Horse Bidder. Any rules developed by the Debtor will provide that all bids will be made and received in one room, on an open basis, and all other bidders participating in the Auction will be entitled to be present for all bidding with the understanding that the true identity of each bidder (and any person or entity with an interest therein) will be fully disclosed to all other bidders participating in the Auction and that all material terms of each Qualified Bid submitted in response to the Baseline Bid or to any successive bids made at the Auction will be fully disclosed to all other bidders throughout the entire Auction.

---

[4] The Baseline Bid consists of the $32,500,000 payment to the Mortgage Lender, plus estimated costs for Fee Claims (including the broker's commission), estimated real estate taxes, and United States Trustee fees. In the event a Stalking Horse Bidder is selected, the Baseline Bid shall be increased by the Break-Up Fee. The Debtor reserves the right to revise the Baseline Bid at any point prior to the Auction.

9

Each Qualified Bidder will be permitted what the Debtor reasonably determines, to be an appropriate amount of time to respond to the previous bid at the Auction.

The Debtor reserves the right to and may, reject at any time before entry of the Sale Order any bid that, in the Debtor's judgment, is (i) inadequate or insufficient; (ii) not in conformity with the requirements of the Bankruptcy Code, these Bid Procedures, or the terms and conditions of the Sale; or (iii) contrary to the best interests of the Debtor and their estates, except that if the Stalking Horse Bid, if any, is the only Qualified Bid, the foregoing provisions of this sentence will be inoperative. In doing so, the Debtor may take into account the factors set forth above regarding the form and content of Qualified Bids and the Debtor's review of bids.

Prior to the conclusion of the Auction, if held, the Debtor, will (i) review and evaluate each bid made at the Auction on the basis of financial and contractual terms and other factors relevant to the sale process, including those factors affecting the speed and certainty of consummating a Sale; (ii) determine the highest or best offer or collection of offers ( "**Successful Bid**"); (iii) determine which Qualified Bid is the next highest or best bid ( "**Back-Up Bid**"); and (iv) notify all Qualified Bidders participating in the Auction, prior to its conclusion, the successful bidder ("**Successful Bidder**"), the amount and other material terms of the Successful Bid, and the identity of the party that submitted the Back-Up Bid (and any person or entity with an interest therein, "**Back-Up Bidder**").

Each Qualified Bidder's participation in the sale and auction process, both before and after the Auction, is a confirmation that it (and any person or entity with an interest therein) has not engaged in any collusion with respect to the submission of any bid, the bidding, or the Auction at any time, and it shall provide an affidavit to that effect at the Debtor's request.

<u>Post-Auction Process</u>

A Successful Bidder and the Back-Up Bidder shall, within one (1) business day after the close of the Auction, submit to the Debtor fully executed revised documentation memorializing the terms of the Successful Bid and Back-Up Bid, as applicable, which shall be in form and substance acceptable to the Debtor. Promptly following the submission of such documentation, the Debtor shall file with the Bankruptcy Court notice of the Successful Bid, the Successful Bidder, and, if applicable, the Back-Up Bid and the Back-Up Bidder. The Successful Bid or Back-Up Bid may not be assigned to any party without the consent of the Debtor.

The Back-Up Bid shall remain open and irrevocable until the earliest to occur of (i) 5:00 p.m. (prevailing Eastern Time) on the date that is thirty (30) days after the date of entry of the Bankruptcy Court's Order approving any transaction with the Successful Bidder, (ii) the consummation of the transaction with the Successful

10

Bidder, and (iii) the release of such bid by the Debtor (such date, "**Back-Up Bid Termination Date**"). If the transaction with a Successful Bidder is terminated prior to the Back-Up Bid Termination Date, the Back-Up Bidder shall be deemed the Successful Bidder and shall be obligated to consummate the Back-Up Bid as if it were the Successful Bid. The Back-Up Bidder will prepare to and be ready to close its proposed transaction as requested by the Debtor.

## Sale Approval Process

Prior to the commencement of the Auction, the Debtor will have confirmed a Plan of Reorganization authorizing the Auction. Accordingly, the sale of the Property to the successfully Bidder will be approved by the Court pursuant to section 1123(a)(5) of the Bankruptcy Code. Similarly, the Debtor will submit a subsequent order in furtherance of the Confirmation Order that will contain findings regarding the good faith of the purchaser of the Property that are equivalent to those contained in section 363(m) of the Bankruptcy Code. Further, after the Auction is completed, the Debtor will submit a supplemental order approving the Sale.

## Treatment and Return of Deposits

Potential Bidders

Within three (3) business days after the Qualified Bid Designation Deadline, the Escrow Agent shall return to each Potential Bidder that was determined not to be a Qualified Bidder, as confirmed by the Debtor, such Potential Bidder's Deposit. Upon the authorized return of such Potential Bidder's Deposit, the bid of such Potential Bidder shall be deemed revoked and no longer enforceable.

Qualified Bidders

The Deposit of a Qualified Bidder will be forfeited to the Debtor if (i) the applicable Qualified Bidder attempts to modify, amend, terminate, or withdraw its Qualified Bid, except as permitted by these Bid Procedures, during the time the Qualified Bid remains binding and irrevocable under these Bid Procedures, or (ii) the Qualified Bidder is selected as the Successful Bidder and fails to enter into the required definitive documentation or to consummate the transaction according to these Bid Procedures and the terms of the applicable transaction documents with respect to the Successful Bid. The Escrow Agent shall release the Deposit by wire transfer of immediately available funds to an account designated by the Debtor two (2) business days after the receipt by the Escrow Agent of a joint written notice by an authorized officer of the Debtor stating that the Qualified Bidder has breached or failed to satisfy its obligations or undertakings.

With the exception of the Deposit of a Successful Bidder and a Back-Up Bidder,

11

the Escrow Agent shall return to any other Qualified Bidder any Deposit three (3) business days after the execution by the Successful Bidder and the Debtor of the documentation memorializing the Successful Bid, but in no event later than seven (7) business days after the conclusion of the Sale Hearing.

Back-Up Bidder

The Escrow Agent shall return a Back-Up Bidder's Deposit within three (3) business days after the occurrence of the applicable Back-Up Bid Termination Date.

The Successful Bidder

The Deposit of the Successful Bidder shall be applied against the cash portion of the Purchase Price of such Successful Bidder upon the consummation of the transaction proposed in the Successful Bid.

Joint Notice to Escrow Agent

The Debtor and, as applicable, the Potential Bidder, Qualified Bidder, Successful Bidder and/or Back-Up Bidder agree to execute an appropriate joint notice to the Escrow Agent for the return of any Deposit to the extent such return is required by these Bid Procedures. If either party fails to execute such written notice, the Deposit may be released by an order of the Bankruptcy Court.

## Notice Parties

Bid Notice Parties

Information that must be provided to the "**Bid Notice Parties**" under these Bid Procedures must be provided to the following parties:

    i.    500 Summit Avenue Mazal LLC, 345 Seventh Avenue, New York, New York 10001 (nir@hap-ny.com);

    ii.    counsel to the Debtor, Leech Tishman Robinson Brog, PLLC, 875 Third Avenue, 9th Floor, New York, NY 10022 (Attn: Fred B. Ringel, Esq. (fringel@leechtishman.com);

    iii.    the Debtor's real estate broker, Hilco Real Estate LLC, 5 Revere Drive, Suite 410, Northbrook, IL, 60062 (Attn: Jeff Azuse, jazuse@hilcoglobal.com); and

    iv.    counsel to the Mortgage Lender, Kriss & Feuerstein LLP, 360 Lexington Avenue, Suite 1200, New York, NY 10017 (Attn: Jerold C. Feuerstein, Esq., jfeuerstein@kandfllp.com; Daniel N. Zinman,

12

Esq., dzinman@kandfllp.com; Stuart L. Kossar, Esq., skossar@kandfllp.com).

## Consent to Jurisdiction and Authority to Condition to Bidding

All Potential Bidders (including a Qualified Bidder, the Successful Bidder, the Back-Up Bidder and the Stalking Horse Bidder) shall be deemed to have (i) consented to the core jurisdiction of the Bankruptcy Court to enter any order or orders, which shall be binding in all respects, in any way related to the Bid Procedures, an Auction, or the construction and enforcement of any agreement or any other document relating to the Sale, (ii) waived any right to a jury trial in connection with any disputes relating to the Bid Procedures, an Auction, or the construction and enforcement of any agreement or any other document relating to the Sale, and (iii) consented to the entry of a final order or judgment in any way related to the Bid Procedures, an Auction, or the construction and enforcement of any agreement or any other document relating to the Sale if it is determined that the Bankruptcy Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

## Reservation of Rights

The Debtor reserves the right, in their reasonable discretion and subject to the exercise of their business judgment, to alter or terminate these Bid Procedures, to waive terms and conditions set forth herein with respect to all Potential Bidders, extend the deadlines set forth herein, alter the assumptions set forth herein, and/or to terminate discussions with any and all prospective acquirers and investors (except for the Successful Bidder) at any time and without specifying the reasons therefor, in each case to the extent not materially inconsistent with these Bid Procedures and/or the Bid Procedures Order; provided that the Debtor's exercise of their discretion in evaluating bids and administering the Bidding and Auction Process does not permit, and shall not be construed as permitting, the Debtor to materially deviate from the procedures, terms, conditions, and protections set forth in these Bid Procedures and/or the Bid Procedures Order in a way that would compromise the sale process.

13